## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDDIE FERNANDEZ and MICHAEL BELLANTONI,**<br><br>              **Plaintiffs,**<br><br>     **v.**<br><br>**BOROUGH OF ROSELAND, et al.,**<br><br>              **Defendants.** | **Civil Action No. 2:20-cv-00103 (ES) (CLW)**<br><br>**OPINION** |

## I.     Introduction

This matter comes before the Court on the motion of Plaintiffs Eddie Fernandez ("Fernandez") and Michael Bellantoni ("Bellantoni") seeking to amend their complaint [ECF No. 40]. Plaintiffs more specifically seek leave to (i) join a new plaintiff, Martin Gutierrez ("Gutierrez"), to the claims previously asserted by Fernandez and Bellantoni; (ii) assert a New Jersey Law Against Discrimination ("NJLAD") race discrimination claim on behalf of Gutierrez; and (iii) assert a Monell claim. Each defendant — the Borough of Roseland ("Roseland"); Roseland Police Department ("RPD") Chief of Police Richard McDonough ("McDonough"); and RPD Captain William Mildon ("Mildon") (collectively, "Defendants") — has separately opposed the motion, and Plaintiffs have filed a reply. ECF No. 45-48.[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

---

[1] Due to the substantial overlap in the allegations against and points raised by each defendant, except where otherwise noted, the Court will address Defendants and their arguments in opposition collectively. Similarly, for ease of reference and unless otherwise noted, the Court will refer to Gutierrez, Fernandez, and Bellantoni collectively as "Plaintiffs."

## II.   **Background**

Fernandez and Bellantoni filed this action in January 2020. ECF No. 1. Fernandez, Bellantoni, and Gutierrez's (collectively, the "Plaintiffs") proposed amended complaint (the "PAC") alleges as follows.[2]

Plaintiffs are employed by the Roseland Police Department (the "RPD"). Fernandez is a Hispanic American and has worked for the RPD since 2003; he is currently a sergeant. Bellantoni has been with the RPD since 2005 and is currently a patrol officer. Gutierrez is a Hispanic American and has worked for the RPD since 2008; he is currently a patrol officer. All three officers' work records and professional reputations are "excellent"; nonetheless, they have been passed over for promotions on numerous occasions, including in 2018 and 2020. PAC at ¶¶ 2-4, 76.

Roseland is a municipality that controls the RPD's daily operations. McDonough, who is Caucasian, has been the Chief of the RPD for approximately nineteen years. Mildon, also Caucasian, is a Captain with the RPD, head of the RPD's Internal Affairs division, and "a submissive follower" of McDonough. McDonough, with Mildon's assistance, "treats the Department as his own personal playground and 'manages' the Department through the use of fear and intimidation, favoritism for those who obey his every whim, and continuous harassment and hostile employment actions against those who disagree or question the propriety of his own mismanagement and corrupt and unlawful practices, or those whom he simply does not like, irrespective of their performance as law enforcement professionals." Both McDonough and Mildon are alleged to be policymakers with respect to police affairs in Roseland. Id. at ¶¶ 5-8; 12.

---

[2] Except for the allegations pertaining to Gutierrez or where otherwise noted, the allegations discussed here (which are culled from the PAC) are identical to those in the original complaint; the Court will therefore refer to the PAC to streamline its discussion.

Defendants are alleged to have engaged in a years-long "systemic and continuous course of harassing and retaliatory conduct against Plaintiffs". Id. at ¶ 14. This grows in large part from Defendants' use of an officer evaluation system that, among other things, unlawfully relies upon ticket quotas;[3] discriminates against officers who use contractual accrued leave time; and targets residents from minority racial groups by directing officers to give tickets, rather than warnings, in areas where more minority individuals drive. McDonough refers to this system as the "Wheel of Death." Id. at ¶¶ 50-65.[4] Plaintiffs allege that, due to their objecting to these and similar policies, they have fallen "out of grace" with McDonough, resulting in their being retaliated and discriminated against by Defendants. Id. at ¶¶ 69-70.  Notable examples include:

- McDonough publicly scolding, humiliating, docking pay from and retaliating against Bellantoni for missing work (despite Bellantoni securing coverage per RPD protocol) by filing disciplinary charges and threatening Bellantoni to concede to the charges or be fired; id. at ¶¶ 33-47;

- McDonough causing Mildon or others to file baseless complaints against Plaintiffs; id. at ¶ 71-74;

- Failures to promote Plaintiffs in 2018 and 2020 despite Plaintiffs' qualifications—this includes less qualified Caucasian officers being promoted over Fernandez at McDonough's urging; id. at ¶¶ 75-80;

- McDonough retaliating against Bellantoni and Fernandez in connection with medical issues, resulting in, inter alia,

---

[3] Under N.J.S.A. 40A:14-181.2, "[a] State, county or municipal police department or force . . . shall not establish any quota for arrests or citations. The department or force may, however, collect, analyze and apply information concerning the number of arrests and citations in order to ensure that a particular officer or group of officers does not violate any applicable legal obligation." Additionally, "[t]he department or force shall not use the number of arrests or citations issued by a law enforcement officer as the sole criterion for promotion, demotion, dismissal, or the earning of any benefit provided by the department or force. Any such arrests or citations, and their ultimate dispositions, may be considered in evaluating the overall performance of a law enforcement officer."

[4] Plaintiffs also allege general forms of misconduct that do not pertain specifically to Plaintiffs, such as Defendants doing political favors for family and friends. The Court will focus its discussion on the allegations concerning the Plaintiffs.

> Bellantoni and Fernandez being passed over for promotions and missing out on salary raises and overtime opportunities; id. at ¶¶ 83-98;

- McDonough responding to an RPD vote of no-confidence which was premised largely on officers' objection to the Wheel of Death and delivered to McDonough by Bellantoni by "intensif[ying] his pattern of intimidation and retaliation"; e.g., threatening Bellantoni to divulge the names of those voting against him or "suffer the consequences"; id. at ¶¶ 116-30;

- McDonough telling an RPD captain that he assigned Mildon to be Plaintiffs' direct supervisor "so that Defendant Mildon can make Plaintiffs' time at the Department as miserable as possible", in part due to Plaintiffs' objections to the Wheel of Death; id. at ¶¶ 131-32;

- Mildon making racist comments to Fernandez such as "I see you're eating rice and beans, how typical"; id. at ¶ 134.

On the strength of these and similar allegations, Fernandez and Bellantoni initially sued Defendants under 42 U.S.C. § 1983, the NJLAD, and various other state and federal statutes. See generally ECF No. 1. As noted, Plaintiffs now seek to include Gutierrez in most of the general allegations previously made by Fernandez and Bellantoni. To this end, and as will be further discussed below, most of the PAC's factual allegations encompass Gutierrez. See, e.g., PAC at ¶ 14 (inserting "each Plaintiff" in place of "Fernandez and Bellantoni"). The same is true of the PAC's first, second, fifth, sixth, and seventh causes of action. Plaintiffs also seek to assert allegations specific to Gutierrez, such as Mildon responding to Gutierrez raising concerns about the Wheel of Death by pulling Gutierrez from an firearms course that would have enabled Gutierrez to become the RPD firearms instructor; Defendants hiring less qualified Caucasian officers over Gutierrez at McDonough's urging; and Mildon making racist comments to Gutierrez such as publicly addressing him as "Hey Guatemalan" and "rice and beans." PAC at ¶¶ 79; 135-45.

Plaintiffs' motion implicates Federal Rules 15, 20, and 21. See, e.g., Custom Pak Brokerage, LLC v. Dandrea Produce, Inc., 2014 U.S. Dist. LEXIS 31681, at *4-5 (D.N.J. Feb. 27, 2014) ("[A]n attempt to add new parties by way of motion to amend invokes Federal Rule of Civil Procedure 21") (citing Truesdale v. Ashcroft, 2006 U.S. Dist. LEXIS 77143, at *7-8 (D.S.C. Mar. 29, 2006)); F.P. Corp. v. Ken Way Transp., 1992 U.S. Dist. LEXIS 3576, at *2 (E.D. Pa. Mar. 17, 1992) ("[M]otions to amend pursuant to Rule 15(a) often implicate Rule 20(a) which governs permissive joinder.") (citing Strawhecker v. Laurel School District, 100 F.R.D. 7, 13-14 (W.D. Pa. 1983)). The Court will therefore conduct Rule 15, 20, and 21 analyses seriatim.

## III.   Rule 15

### a.   Legal Standard and Summary of Defendants' Arguments

Under Rule 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016) (quoting U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849 (3d Cir. 2014)). The Third Circuit "has interpreted these factors to emphasize that 'prejudice to the non-moving party is the touchstone for the denial of the amendment.'" Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co. v. Occupational Safety and Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).[5]

---

[5] Plaintiffs' motion also implicates Rule 15(d), which "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). As the standards for amendment under Rules 15(a) and 15(d) are "essentially the same," Strenger v. Miner, 2021 U.S. Dist. LEXIS 62362, at *13 (D.N.J. Mar. 31, 2021)

"A court denies a motion to amend on futility grounds if the complaint, as amended, would fail to state a claim upon which relief could be granted. We assess futility with the same standard of legal sufficiency as applies under Rule 12(b)(6)." Woodend v. Lenape Reg'l High Sch. Dist., 535 F. App'x 164, 168 (3d Cir. 2013) (citations and quotation marks omitted). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (quotation marks omitted)). In conducting this analysis, a court must "accept as true all of the factual allegations, as well as all reasonable inferences, reasonably drawn from the complaint, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing cases).

Defendants' Rule 15 arguments are that the proposed Monell claim is time-barred and substantively deficient and that Gutierrez's NJLAD claim is time-barred. The Court rejects Defendants' timeliness arguments and rejects in part and accepts in part Defendants' objections to the substance of the proposed Monell claim.

**b.**  **The Proposed *Monell* Claim**[6]

**i.**  **Background**

Under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), "[l]ocal governing bodies . . . may be sued directly under [42 U.S.C.] § 1983 . . . [where an] action that is alleged to be

---

(quoting Ebert v. Twp. of Hamilton, 2020 U.S. Dist. LEXIS 33378, at *5 (D.N.J. Feb. 27, 2020)), the Court will not conduct a separate Rule 15(d) analysis. Similarly, because Plaintiffs' motion is timely under Rule 16, the Court will not engage in a detailed Rule 16 analysis. See ECF No. 25, 28, 31, 32, 39.

[6] The proposed § 1983 claim is not expressly labeled a Monell claim; however, as it generally tracks Monell and is referred to as such in Plaintiffs' moving papers, the Court will construe it accordingly.

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. In addition, local governments can be sued for constitutional deprivations visited pursuant to governmental custom." Marran v. Marran, 376 F.3d 143, 155-56 (3d Cir. 2004) (discussing Monell) (citations and quotation marks omitted).[7] A Monell plaintiff must show that "(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" Vargas v. City of Phila., 783 F.3d 962, 974 (3d Cir. 2015) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91 (1989)). "[A] municipality can be found liable under § 1983 only when the municipality itself causes the constitutional violation at issue." Id. (citing Canton, 489 U.S. at 385).

Plaintiffs' proposed Monell claim alleges that Roseland failed to properly train and supervise McDonough and Mildon, resulting in a "free for all" in which officers who complied with McDonough and Mildon's "racially charged agendas" received promotions while those, such as Plaintiffs, who did not were refused promotion and overtime opportunities and ostracized by other officers. Plaintiffs also allege that McDonough failed to train and supervise Mildon; that Roseland failed to train and supervise Mildon and McDonough; and that Roseland failed to implement rules ensuring that racial bias was not a factor in determining promotions. Plaintiffs re-allege here the Wheel of Death practices, spearheaded by Mildon, claimed to have resulted in a disproportionate number of citations being issued to minority drivers. McDonough and Roseland are alleged to have refused to take corrective action in response to officer complaints about these practices and to have visited unfair treatment and adverse employment actions, such as refusing

---

[7] Likewise, local government officials may be sued in their "official capacities" under § 1983. Monell, 436 U.S. at 690 n.55.

promotion, upon complaining officers. As a result of this "policy, custom and practice" to fail to adequately train, supervise, and enact or enforce procedures, Plaintiffs allegedly were "treated disparately, were not promoted, did not receive a fair share of overtime, and were otherwise treated with malice", in violation of section 1983. PAC at ¶¶ 164-80.

Plaintiffs' theory of <u>Monell</u> liability is not entirely straightforward. While they label this claim as sounding in "Section 1983, Unlawful Policy, Custom, Practice <u>and</u> Inadequate Training and Supervision", PAC at p. 29 (emphasis added), the allegations almost all center on the alleged failures to supervise, train, and implement rules and regulations. <u>See, e.g.</u>, PAC at ¶ 166 ("[M]ost pertinent to this Complaint, Defendant McDonough failed to supervise, train, and curtail Defendant Mildon's conduct and oversight."). In turn, these failures allegedly "resulted in additional unspoken policies" through which Plaintiffs were discriminated and retaliated against. <u>Id.</u> at ¶¶ 169-70. Of note, "'[f]ailure to' claims — failure to train, failure to discipline, or . . . failure to supervise — are generally considered a subcategory of policy or practice liability." <u>Barkes v. First Corr. Med., Inc.</u>, 766 F.3d 307, 316-17 (3d Cir. 2014) (citing Rosalie Berger Levinson, <u>Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post-Iqbal/Connick World</u>, 47 Harv. C.R.-C.L. L. Rev. 273, 280 (2012)) (<u>rev'd on other grounds</u> <u>sub. nom.</u> <u>Taylor v. Barkes</u>, 575 U.S. 822 (2015)). Somewhat counterintuitively, therefore, Plaintiffs primarily assert these "subcategory" violations which are alleged to have resulted in <u>Monell</u> violations of the more generic sort.

**ii.   Timeliness of the Proposed *Monell* Claim**

Defendants argue the proposed <u>Monell</u> claim is untimely under the two-year statute of limitations applicable to § 1983 claims. <u>See, e.g.</u>, <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 126-27 (3d Cir. 2006). This argument fails.

8

As a threshold matter, and although not discussed by the parties, this question implicates the relation back doctrine. Under FED. R. CIV. P. 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading". Thus, "even claims that were not set forth in the initial pleading may be deemed to have been filed as of the date of the original pleading, so long as the original pleading provided the opposing party with sufficient notice of the 'general fact situation and legal theory upon which the amending party proceeds.'" Lopez v. City of Plainfield, 2017 U.S. Dist. LEXIS 10220, at *12 (D.N.J. Jan. 25, 2017) (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (2004)). As will be discussed, the proposed Monell claim arises from the same alleged course of conduct as that underlying the original complaint. As a result, Defendants have been on notice of the "general fact situation and legal theory" upon which the PAC is premised since the filing of the original pleading on January 3, 2020. As a result, that date, not the date of the PAC, controls in determining the PAC's timeliness.

Some of Plaintiffs' Monell allegations concern dates both within and without the limitations period. For example, Plaintiffs were allegedly denied promotions in 2018 and 2020. PAC at ¶ 76. Even assuming the former occurred before January 3, 2018 (and therefore outside the two-year limitations period), it cannot be said that Plaintiffs have failed to allege conduct occurring within the actionable period. Relatedly, Plaintiffs do not date certain of their Monell allegations. See, e.g., PAC at ¶¶ 167-68. On the present record, the Court cannot deem these allegations futile as untimely. See, e.g., King v. McPherson, 2016 U.S. Dist. LEXIS 116847, at *17 (D.S.C. Aug. 29, 2016) (rejecting portion of R&R "recommending dismissal of claims against Defendant Washington based on the running of the limitations period, because of the uncertainty"

as to the timeliness of such claims); <u>Falodun v. Olson</u>, 2011 U.S. Dist. LEXIS 23038, at *8 (M.D. Pa. Mar. 8, 2011) ("[Plaintiff] does not provide a date in connection with his allegation. Therefore, it is unclear on the face of the Second Amended Complaint whether [plaintiff's] claims against these Defendants are barred by the applicable statute of limitations."). If discovery reveals that certain of these alleged actions occurred outside the limitations period, Defendants may seek to dismiss them.

### iii.   Substance of the Proposed *Monell* Claim

Defendants lodge several challenges to Plaintiffs' proposed <u>Monell</u> claim. As will be discussed, some, but not all, of these arguments hold water, and ultimately Plaintiffs' claim as currently pled is futile as a matter of law. In accordance with the analysis below, the Court will deny Plaintiffs' request to plead this portion of the PAC and will permit Plaintiffs to replead this claim to cure its present infirmities.

First and as noted, Plaintiffs appear to assert multiple theories of <u>Monell</u> liability. One such theory arises from Defendants' alleged failure to ensure "that racial bias was not a factor in the promotion of otherwise qualified police officers." PAC at ¶ 167. Although framed here in the negative—<u>i.e.</u>, a "failure to"—in substance, Plaintiffs allege here that Defendants employed a practice, policy, or custom in which race played a role in promotion decisions.[8] This provides a colorable theory of liability under <u>Monell</u>. <u>Cf.</u>, <u>e.g.</u>, <u>Baldwin v. Gramiccioni</u>, 2017 U.S. Dist. LEXIS 4450, at *33 n.8 (D.N.J. Jan. 11, 2017) (<u>Monell</u> claim based on alleged race-based refusal to promote employees).[9] Moreover, this and related allegations dispose of several of Defendants'

---

[8] This aligns with the allegations that Fernandez and Gutierrez were passed over for promotions in favor of less qualified Caucasian officers. PAC at ¶¶ 78-79.

[9] The same holds true as to the alleged loss of overtime. <u>See</u>, <u>e.g.</u>, <u>Malae v. City of Santa Clara</u>, 2021 U.S. Dist. LEXIS 149152, at *13 (N.D. Cal. Aug. 9, 2021) (<u>Monell</u> claim based on loss of overtime).

futility arguments: that Mildon had no input in promotions; that there are no allegations of McDonough's personal involvement in the alleged deprivation of Plaintiffs' constitutional rights; and that there cannot be supervisory liability against McDonough because there is no alleged constitutional violation by a subordinate.[10]

However, allegations of Plaintiffs being "ostracized by fellow police officers" and related catchall contentions that Plaintiffs were "otherwise treated with malice" cannot support Monell liability, as they fail to assert that Plaintiffs suffered a constitutional injury. See, e.g., Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Cubas v. St. James Par. Sch. Bd., 2021 U.S. Dist. LEXIS 62133, at *47-48 (E.D. La. Mar. 31, 2021) (plaintiff's allegations that "Defendants harassed, verbally assaulted her, complained about her job performance, had her colleagues and coworkers ostracize her, make false accusations against her, spread rumors about [her], [and] call[ed] her names . . . are insufficient to state a plausible § 1983 claim . . . as there is no allegation of a violation of [plaintiff's] constitutional rights").

Also futile are the allegations concerning Defendants' alleged targeting of minority drivers. Monell plaintiffs "must identify a municipal policy or custom that caused plaintiff's constitutional

---

[10] Additionally, it is not clear, in the first instance, whether Plaintiffs must establish these elements here, as much of the cited authority concerns forms of supervisory liability arising outside of the Monell context. See, e.g., Reedy v. Evanson, 615 F.3d 197, 231 n.45 (3d Cir. 2010) ("[T]he parties focus on traditional principles of supervisory liability against Mannell as an individual, rather than on Monell liability."); see also Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) ("There are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused [the] constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.") (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)) (quotation marks omitted). Because, as noted above, these arguments fail on the facts, the Court will not belabor their adequacy as a matter of law.

injury." <u>Downey v. Rose</u>, 1997 U.S. Dist. LEXIS 10533, at *20 (E.D. Pa. July 22, 1997) (citing cases) (quotation marks removed; emphasis added); <u>see</u>, <u>e.g.</u>, <u>Rider v. Castro</u>, 2019 U.S. Dist. LEXIS 192899, at *28 (M.D. Pa. Nov. 1, 2019) ("[T]here must be a direct causal link between the policy or custom and the alleged constitutional violation.") (citing <u>Canton</u>, 489 U.S. at 385). More generally, Article III standing requires plaintiffs to have suffered an "injury in fact"; that is, "the plaintiff must show that <u>he</u> <u>personally</u> has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." <u>Gladstone Realtors v. Village of Bellwood</u>, 441 U.S. 91, 99 (1979) (emphasis added) (citing cases). The claim must be based on the plaintiff's own legal rights and interests rather than those of third parties. <u>Elk Grove Unified School Dist. v. Newdow</u>, 542 U.S. 1, 12, 15 n.7 (2004); <u>cf.</u> <u>Barrows v. Jackson</u>, 346 U.S. 249, 256 (1953) (collecting cases "in which the Court has held that even though a party will suffer a direct substantial injury from application of a statute, he cannot challenge its constitutionality unless he can show that he is within the class whose constitutional rights are allegedly infringed").

The alleged harm to minority drivers falls outside the umbrella of <u>Monell</u> liability. Although there is some link between the alleged policy directed at these drivers and the injuries allegedly suffered by Plaintiffs, the connection is far too tenuous to constitute the sort of "close causal nexus required by <u>Monell</u>." <u>Rider</u>, 2019 U.S. Dist. LEXIS 192899, at *28. With this said, these allegations provide a certain degree of color and context for Plaintiffs' claims as a whole; consequently, the Court will permit Plaintiffs to append them in the factual background portion of the PAC.[11] <u>Cf.</u> <u>Cestra v. Mylan, Inc.</u>, 2015 U.S. Dist. LEXIS 67406, at *37-38 (W.D. Pa. Apr. 6, 2015) (denying motion to strike where subject "allegations provide context relating to Plaintiff's termination"). However, the Court will not permit Plaintiffs to assert these allegations within their

---

[11] Of note, similar allegations already appear in the PAC. <u>See</u> PAC at ¶¶ 59-62.

<u>Monell</u> claim, as such would amount to a tacit endorsement of these allegations supporting <u>Monell</u> liability.

Next, the PAC is also inadequate to the extent Plaintiffs proceed on a failure to train or failure to supervise theory. As stated by the Third Circuit,

> [e]stablishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred. . . .

<u>Reitz v. Cty. of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997) (citing <u>Board of County Commissioners of Bryan County v. Brown</u>, 117 S. Ct. 1382, 1388-89 (1997) and <u>Colburn v. Upper Darby Township</u>, 946 F.2d 1017, 1030 (3d Cir. 1991)). Similarly, a failure to supervise claim requires identification of "a specific supervisory practice or procedure that [Defendants] failed to employ." <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989).[12] The PAC's failure to train and failure to supervise allegations are deficient insofar as Plaintiffs do not identify any specific training or supervisory practice the lack thereof caused their injuries; instead, making vague assertions as to McDonough's and Roseland's alleged shortcomings in this regard. <u>See</u>, <u>e.g.</u>, PAC at ¶¶ 166-67 ("Defendant McDonough failed to supervise, train, and curtail Defendant Mildon's conduct and oversight. Defendant McDonough neglected his supervisory and training roles because of his close friendship with Defendant Mildon. . . . Defendant Borough of Roseland failed to train and supervise Defendants McDonough and Mildon, and failed to implement appropriate Rules and

---

[12] Plaintiffs' alleged "failure to implement" is most accurately viewed as an element of a failure to supervise claim. <u>See</u>, <u>e.g.</u>, <u>Barkes</u>, 766 F.3d at 317 (failure to supervise claim requires, <u>inter alia</u>, that "the constitutional injury was caused by the failure to implement the supervisory practice or procedure") (citing cases).

Regulations, General Orders, Special Orders or Standard Operating Procedure . . . .”). Plaintiffs thus fail to allege a colorable failure to train or failure to supervise claim.

Finally, it follows from the above that Plaintiffs’ claim is futile because it does not allege—in connection with actionable constitutional violations—that McDonough or Mildon were final policymakers. As established by the Supreme Court, “not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.” Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); e.g., Kelley v. O’Malley, 328 F. Supp. 3d 447, 461 (W.D. Pa. 2018) (“[T]o state a Monell claim upon which relief may be granted, a complaint must include the identity of the municipality’s final policymaker and factual allegations that ‘link the alleged offending policies or customs to’ the final policymaker.”) (quoting Rees v. Office of Children & Youth, 473 Fed. Appx. 139, 143 (3d Cir. 2012)), rev’d on other grounds, 787 F. App’x 102 (3d Cir. 2019). While true that the final policymaker issue “is ultimately a legal rather than a factual question, that does not relieve [Plaintiffs] of the obligation to plead in some fashion that [Defendants] had final policy making authority, as that is a key element of a Monell claim.” Santiago v. Warminster Twp., 629 F.3d 121, 135 n.11 (3d Cir. 2010) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988)) (citation omitted).

Here, Plaintiffs’ allegations concerning McDonough and Mildon’s policymaker statuses, PAC at ¶¶ 7-8, are “[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements”. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, Plaintiffs nowhere allege the “key element” that McDonough or Mildon had final policymaking authority. And while it is true that Plaintiffs allege that McDonough “has the duty and responsibility for the day to day operations of the Borough of Roseland Police Department”, PAC

at ¶ 165, "[i]n order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine . . . whether, as a matter of state law, the official is responsible for making policy <u>in the particular area</u> of municipal business in question". <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 245 (3d Cir. 2006) (citing cases). As noted, the actionable portion of the <u>Monell</u> claim concerns Defendants' alleged promotion and overtime policies, and nowhere do Plaintiffs allege that McDonough (or Mildon, for that matter) had final authority with respect to such policies. As a result, the allegations concerning McDonough's general oversight of the RPD are insufficient to establish final policymaking authority for purposes of this claim. <u>See</u>, <u>e.g.</u>, <u>Mrazek v. Stafford Twp.</u>, 2017 U.S. Dist. LEXIS 68893, at *28-29 (D.N.J. May 5, 2017) ("While Mrazek is correct that this statute provides Chief Giberson with authority over 'routine day to day operations,' his assertion that Chief Giberson has authority 'to make policy' with respect to promotions or promotion decisions is erroneous.") (citation omitted).

In summary, Plaintiffs' <u>Monell</u> claim as currently pled is futile as a matter of law. Plaintiffs will be granted leave to replead this claim in accordance with the above.

### c. Timeliness of the Proposed NJLAD Claim

Defendants attack Gutierrez's proposed NJLAD claim as time-barred under the NJLAD's two-year statute of limitations. <u>See</u> <u>Montells v. Haynes</u>, 133 N.J. 282, 286 (1993) (two-year limitations period for NJLAD claims). It is true that some of the alleged discriminatory conduct directed at Gutierrez occurred more than two years before the date of the PAC. <u>See</u> PAC at ¶¶ 135-52 (alleging discrimination suffered by Gutierrez in 2017). As above, however, much of the alleged conduct either is undated or occurred within the limitations period, and Gutierrez expressly alleges at least one discriminatory act—Defendants' refusal to promote in 2020—that falls safely within

the actionable period. Id. at ¶¶ 76, 196. Likewise as above, Defendants may seek to dismiss untimely portions of this claim upon a more developed record.

## IV.   **Rule 20**

### a.   **Legal Standard and Summary of the Parties' Arguments**

Procedurally, Plaintiffs' request to join Gutierrez primarily implicates Rule 20(a), which states:

> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

FED. R. CIV. P. 20. Under Rule 20,

> the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged. Rule 20 permits the joinder of a person who has some interest in an action . . . , even when that interest is not so strong as to require his joinder under Rule 19.

Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) and Field v. Volkswagenwerk AG, 626 F.2d 293, 299 (3d Cir. 1980) (citations and quotation marks omitted). "The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy." Alford v. Christie, 2014 U.S. Dist. LEXIS 84912, at *4 (D.N.J. June 23, 2014) (Salas, J.) (citing Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002)). "Joinder therefore permits 'all reasonably related claims for relief by or against different parties to be tried in a single proceeding[,]' without requiring absolute identity of all events." Live Face on Web, LLC v. Green Tech. Servs., 2014 U.S. Dist. LEXIS

72281, at *10 (D.N.J. May 27, 2014) (quoting <u>Dragon Quest Prods., LLC v. Does</u>, 2013 U.S. Dist. LEXIS 83683, at *11 (D.N.J. June 13, 2013)). The Court finds both Rule 20 elements are satisfied as to Gutierrez, and therefore, that joinder of his claims is proper.

### b.  <u>Same Transaction or Occurrence</u>

The PAC satisfies Rule 20(a)'s first requirement.  Initially, Plaintiffs largely seek the same remedies and therefore "assert [a] right to relief jointly." Further, "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence". <u>Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co.</u>, 259 F.R.D. 95, 101 (D.N.J. 2009) (Salas, J.) (quoting <u>Mosley v. General Motors Corp.</u>, 497 F.2d 1330, 1333 (8th Cir. 1974)). Here, the PAC's detailed factual background alleges <u>all</u> Plaintiffs allegedly suffering workplace discrimination and retaliation largely due to their objections to the Wheel of Death. <u>See generally</u> PAC at ¶¶ 16-158. To this end, Plaintiffs' proposed first, second, fifth, sixth, and seventh causes of action concern all Plaintiffs in equal part, making clear that each Plaintiffs' claims are logically related. The Court therefore rejects Mildon's contention that Gutierrez's claims "are unique to him and not shared by Plaintiffs," ECF no. 47 at 10, and McDonough's assertion that "[t]here are no facts whatsoever" linking Gutierrez to the original pleading. ECF No. 46 at 18. To the contrary, many of Gutierrez's allegations and proposed claims are shared amongst him, Fernandez and Bellantoni.

Even if one were to only consider Gutierrez's proposed NJLAD claim, Defendants' arguments entail too narrow a perspective. Mildon's opposition is illustrative. He cites the specific alleged discriminatory comments made by him to Gutierrez and argues that "[n]o other Plaintiff alleges these comments were made"; he similarly writes that "[n]o other Plaintiff alleges they were denied the ability to be enrolled in the Firearms Instructor Course." ECF No. 47 at 6. This argument

improperly "require[es] absolute identity of all events." <u>Live Face on Web</u>, <u>supra</u>. Correctly viewed, Gutierrez's NJLAD claim is reasonably related to Fernandez's: Fernandez was allegedly discriminated against for being Hispanic; so was Gutierrez. Fernandez was allegedly passed over for promotions in favor of Caucasian officers; so was Gutierrez. PAC at ¶¶ 78-79; 134-39. Courts find Rule 20(a)'s first prong met upon less interconnected allegations. <u>See</u>, <u>e.g.</u>, <u>Robinson v. Midwest Div.-Rmc</u>, 2020 U.S. Dist. LEXIS 78792, at *4-5 (W.D. Mo. May 5, 2020) ("While each proposed plaintiff holds a different job title than Robinson and reported to different supervisors, their alleged injuries arise from the same general policy and practice of discrimination purportedly practiced by RMC against African American employees, including unfair treatment and the systematic denial of promotional opportunities. Accordingly, the proposed plaintiffs' claims are reasonably related and their request for relief arises out of the same transaction or occurrence as Robinson's own action.") (citing <u>Mosley</u>, 497 F.2d at 1334). As a result, Rule 20(a)'s "same transaction or occurrence" element is safely met here.

### c. **Common Question**

Rule 20(a)'s common question requirement is also satisfied. This prong "does not require precise congruence of all factual and legal issues; indeed, joinder may be permissible if there is but one question of law or fact common to the parties." <u>Directv, Inc. v. Gallagher</u>, 2004 U.S. Dist. LEXIS 28010, at *3-4 (D.N.J. Feb. 4, 2004) (quoting <u>Morris v. Paul Revere Ins. Group</u>, 986 F.Supp. 872, 885 (D.N.J. 1997)). Perhaps anticipating that it would be an exercise in futility to argue that Gutierrez does not share a single common question of law or fact with Fernandez or Bellantoni, Defendants only passingly address this element. Indeed, common questions abound throughout the PAC. This bar is safely cleared.

Accordingly, the Court concludes that Gutierrez satisfies Rule 20(a)'s joinder requirements.[13]

## V.    <u>Rule 21</u>

Defendants' oppositions discuss FED. R. CIV. P. 21, under which "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." As an initial matter, the Court disagrees with Defendants' contention that Plaintiffs' motion requires independent satisfaction of Rule 21-specific factors. Instead, the case law indicates that even where Rule 21 is implicated, "the same standards apply [as] under Rule[] 15(a)." <u>Custom Pak</u>, 2014 U.S. Dist. LEXIS 31681, at *6 (quoting <u>Sutton v. New Century Fin.</u> <u>Servs.</u>, 2006 U.S. Dist. LEXIS 93685, at *3 (D.N.J. Dec. 11, 2006) and applying Rule 15 standard in motion implicating Rule 21). Indeed, "Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20." <u>Lopez v. City of Irvington</u>, 2008 U.S. Dist. LEXIS 14941, at *5 (D.N.J. Feb. 27, 2008) (quoting <u>DIRECTV, Inc. v. Gallagher</u>, 2004 U.S. Dist. LEXIS 28010, at *3 (D.N.J. Feb. 4, 2004)) (quotation mark omitted). This is not the case here, nor have Defendants cross-moved for Rule 21 severance.

Because, "[h]owever, the Rule may also be invoked to prevent prejudice or promote judicial efficiency", <u>id.</u> (quoting <u>Boyer v. Johnson Matthey, Inc.</u>, 2004 U.S. Dist. LEXIS 9802, at

---

[13] McDonough and Roseland both cite <u>Boyer v. Snap-on Tools Corp.</u>, 913 F.2d 108 (3d Cir. 1990) for the purported notion that Gutierrez must provide an "independent basis" for invoking federal jurisdiction, seeming to suggest that Gutierrez's state law NJLAD claim does not suffice for jurisdictional purposes. This argument is misplaced. First, Gutierrez is joined in several of the PAC's federal claims. Second, <u>Boyer</u> does not say this; instead, it stands for the notion that a court may not allow merits determinations to bleed into jurisdictional questions when determining the propriety of removal. <u>Id.</u> at 111-13 (discussing <u>Chesapeake & Ohio Ry. v. Cockrell</u>, 232 U.S. 146 (1914)). Finally, this argument runs directly counter to the express statutory provision that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

*9 (E.D. Pa. Apr. 16, 2004)),[14] the Court will briefly address the applicable Rule 21 factors, which, as applied, further support joinder. Courts considering Rule 21 severance assess "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted." Bayshore Recycling Corp. v. Ace Am. Ins. Co., 2020 U.S. Dist. LEXIS 73168, at *2 (D.N.J. Apr. 27, 2020) (citing Picozzi v. Connor, 2012 U.S. Dist. LEXIS 95129, at *20 (D.N.J. July 9, 2012)); see also Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000) ("Whether severance is warranted requires balancing of several considerations, including 'the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation.'") (quoting German v. Federal Home Loan Mortgage Corp., 896 F. Supp. 1385, 1400 n.6 (S.D.N.Y. 1995)). Of note, these considerations also underlie an evaluation of whether to order separate trials under Rule 42. Both determinations are within the Court's broad discretion. See, e.g., Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999) (discussing Rule 21 severance and Rule 42 bifurcation).

As detailed above, there is sufficient overlap among the Plaintiffs' claims that the relevant issues are not significantly different from one another and will not require substantially different bodies of testimony and proof to the point that severance is warranted. In arguing to the contrary, Defendants again misconstrue the PAC; for example, Roseland's comment that "[a]n examination of the original Plaintiffs' federal claims (as contained in the First and Eight Counts of the Original Complaint and which remain unchanged in the PAC) appears that they are based substantially on

---

[14] As noted, the Rule expressly contemplates sua sponte severance.

allegations that do not involve Gutierrez whatsoever." ECF No. 45 at 10. This fails to account for the numerous allegations and claims initially asserted by Fernandez and Bellantoni that, as presented in the PAC, substantially involve Gutierrez.

Mildon argues that "joinder would undeniably prejudice Defendant Mildon in that Jurors would be hearing testimony concerning completely unrelated allegations" from those made by Gutierrez against him, therefore entitling Mildon to severance at the time of trial. ECF No. 47 at 9-10. Mildon overlooks that severance under Rule 21 and separate trials under Rule 42 are distinct remedies. Prejudice warranting the latter—even if it exists—does not justify the former. To this end, Defendants do not identify any pretrial prejudice they will suffer if Plaintiffs' claims proceed as one.[15]

Finally, the Court is guided here by the above-referenced "impulse . . . toward entertaining the broadest possible scope of action consistent with fairness to the parties"; an approach geared toward "promot[ing] trial convenience and expedit[ing] the final determination of disputes", thereby preventing multiple lawsuits. Mosley, 497 F.2d at 1332 (citing 7 C. Wright, Federal Practice and Procedure § 1652 at 265 (1972)). "Single trials generally tend to lessen the delay, expense and inconvenience to all concerned." Id. Joinder of Fernandez's claims will serve these salutary goals; conversely, severance would require separate discovery as to Fernandez, Bellantoni, and Gutierrez, undoubtedly and unnecessarily complicating and prolonging matters for the Court, parties, and counsel. Rule 21 therefore further supports Plaintiffs' claims being litigated jointly.

---

[15] Mildon may raise these concerns in a Rule 42 motion at the time of trial.

**VI.**    **<u>Conclusion</u>**

An order consistent with this opinion follows.

Dated: September 2, 2021

<u>*/s/ Cathy L. Waldor*</u>
Cathy L. Waldor, U.S.M.J.
